[Docket Item No. 17]

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT G. JONES | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 06-1606 (JBS) |
| v. | |
| JONATHAN C. MINER | **OPINION** |
| Defendant. | |

**APPEARANCES:**

Robert G. Jones
FCI Fairton
P.O. Box 420
Fairton, New Jersey 08320
    Plaintiff pro se

Christopher J. Christie
United States Attorney
    By:  Louis J. Bizzarri
        Assistant United States Attorney
OFFICE OF THE U.S. ATTORNEY
401 Market Street, Room 2070
P.O. Box 1427
Camden, New Jersey 08101
    Attorney for Defendant

**SIMANDLE, District Judge**:

    Plaintiff, Robert G. Jones, currently incarcerated at the Federal Correctional Institution Fairton ("FCI Fairton"), seeks to bring this civil rights action alleging inadequate medical care against Fairton's warden, Jonathan C. Miner.  Currently before the Court is Defendant Jonathan C. Miner's motion for summary judgment [Docket Item No. 17].  For the reasons expressed

below, this Court will grant Defendant's motion for summary judgment finding that Defendant is not a properly named defendant in this case. Plaintiff's claims against Mr. Miner will therefore be dismissed.

I.   **BACKGROUND**

   A. **Facts**

Plaintiff has been incarcerated at FCI Fairton since October 15, 2004. (Complaint at 10a.) He was 68 years of age at the time he filed his Complaint. (Id.) On October 6, 2004, prior to his arrival to FCI Fairton, Plaintiff was involved in a single motor vehicle accident while being transported from the Bureau of Prisons airlift at Otisville airport to Metropolitan Detention Center Brooklyn ("MDC Brooklyn"). (Id.) At the time of the accident, Plaintiff was being transported in a bus operated by the Bureau of Prisons ("BOP"). (Id.) Plaintiff's claim alleges that during the accident, he was "violently thrown from his seat to the floor," that he "was in handcuffs and leg irons," and that he "struck his head, legs and back on chairs, which are constructed [sic] galvanized steel." (Id.) Plaintiff claims that he suffered from a concussion, contusions on his back and legs; severe pain in his lower back, numbness in his groin area, legs, and back resulting in his inability to walk any further than thirty feet without assistance; and minor loss of bladder control. (Id.) Plaintiff alleges that he "has not been afforded

adequate medical treatment from the bureau of prisons[,] specifically F.C.I. Fairton" despite his experiencing "extreme pain and discomfort," a condition that was allegedly nonexistent prior to the accident. (Id.) He further claims that his pain was "caused by the collision." (Id.) He alleges that "[t]he health service administrator as well as warden Miner has acknowledged the existence of a serious medical condition, but they have refused provide [sic] the appropriate treatment." (Id.) Beyond the above-mentioned allegations, Plaintiff does not allege any specific acts or omissions committed by Defendant or any other BOP official.

The summary judgment record indicates that Plaintiff presented himself to health services at MDC Brooklyn the day after the accident, on October 7, 2006, reporting of neck pain and a headache. (Def.'s Br. at Ex. F.) The MDC Brooklyn's physician's assessment at the time was that Plaintiff suffers from "mild parietal contusion" requiring "minor first aid treatment." (Morales Aff. at Ex. A.) He was prescribed aspirin. (Id.)

After being relocated to FCI Fairton, Plaintiff visited FCI Fairton's health services on October 19, 2004 complaining of a headache and lower-back pain as well as "needle and pins[-]like" pain impairing his ability to walk. (Morales Aff. at Ex. B.) The medical staff observed that Plaintiff was able to bend down

"almost touching his toes" (id.), and ordered an x-ray of Plaintiff's spine. (Id.) The result, obtained ten days later on October 29, 2004, shows no gross fracture on Plaintiff's cervical or lumbosacral spines. (Id. at Ex. C.) The radiologist, Michael A. Villani, M.D. observed "degenerative changes without gross fracture" on Plaintiff's cervical spine and found "no acute process" affecting Plaintiff's lumbosacral spine. (Id.) Next, on October 26, 2004, Plaintiff visited FCI Fairton medical services complaining of left leg pain, although his physical examination showed normal findings. (Def.'s Br. at Ex. F.) On December 17, 2004, Plaintiff received a corticosteroid injection to ameliorate his back pain. (Id.)

The record is sparse with regard to the medical treatment Plaintiff received during the period between his visit to FCI Fairton medical services on October 19, 2004 and July 14, 2005, the day Plaintiff acknowledged BOP's denial of a tort claim he brought against the BOP. However, it appears that Plaintiff visited FCI Fairton medical services at least three times during this nine-month period. (Id.)

On July 11, 2005, FCI Fairton clinical director ordered an MRI of Plaintiff's back. (Id.) On August 25, 2005, an MRI was performed. (Morales Aff. at Ex. D.) The MRI found a bulge of

4

the L5-S1 disc[1] and generalized loss of lumbar spine vertebral height, but FCI Fairton clinical director, Ruben Morales, M.D. determined that the result did not necessitate an immediate referral or surgical intervention.  (Id.)

**B. Procedural History**

Plaintiff, acting pro se, filed a complaint on January 30, 2006 against Jonathan C. Miner as the sole defendant.[2]  (Compl. at 1.)  Plaintiff seeks injunctive relief in the form of "immediate medical treatment and a transfer to a medical facility in the Bureau of Prison."  (Compl. at 10a.)  Defendant was at one point the Warden of FCI Fairton during Plaintiff's incarceration there but does not currently serve as the Warden at FCI Fairton. (Def.'s Br. at 2.)  On May 18, 2007 Defendant filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).[3]  [Docket Item 17.]  Plaintiff failed to oppose Defendant's motion or request that the Court grant him additional time to file a response.[4]

---

[1]  Dr. Morales did not find any connection between this bulge and the bus accident on October 6, 2004.  (Morales Aff. ¶ 6.)

[2]  This matter was transferred February 10, 2006 from the United States District Court for the District of Columbia. [Docket Item No. 1].

[3]  Defendant's certification of service indicates that his brief was sent to Plaintiff's address listed in the Complaint.

[4]  Subsequent to Defendant's filing of this motion for summary judgment, Plaintiff filed a motion to appoint pro bono

**II.   DISCUSSION**

   **A. Standard of Review**

In deciding Defendant's motion for summary judgment, the court must determine whether "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999)(citing Fed. R. Civ. P. 56(c)).  A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the nonmoving party fails to oppose the motion by evidence such as written objection, memorandum, or affidavits, the court "will accept as true all material facts set forth by the moving party with appropriate record support." Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990)(quoting Jaroma v. Massey, 873 F.2d 17, 21 (1st Cir. 1989)).  If the nonmoving party has failed to establish a triable issue of fact, summary judgment will not be granted unless "appropriate," and only if movants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e).[5]

---

counsel and a motion to have Complaint construed as originally filed.  Both motions were denied without prejudice. [Docket Item Nos. 20 and 21].  There has not been any activity in the docket since.

   [5] Before addressing the merits of Defendant's motion, the Court is constrained to note that Defendant failed to provide the

B. **Plaintiff's Claims**

Plaintiff's claim challenges the adequacy of his medical care. Thus his claim would have been more properly brought under the Federal Tort Claims Act ("FTCA") 28 U.S.C. §§ 1346(b), 2671-80, or in an action filed pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971). See Preiser v. Rodriguez, 411 U.S. 475, 499 n.15 (1973) (giving counsel that "the clearest remedy for prisoners challenging [the] conditions [of prison life] was through a civil rights action"); Nelson v. Campbell, 541 U.S. 637 (2004) (holding that the "core" of habeas corpus petitions are challenges to "the fact of his conviction or the duration of his sentence"). The Court will construe Plaintiff's action as either an action under the FTCA or a Bivens action.

Because Defendant is not the appropriate defendant under

---

Court with a Statement of Material Facts with citations to the record as required by Local Civil Rule 56.1 ("Rule 56.1"). Rule 56.1 provides that "on a motion for summary judgment, each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." L. Civ. R. 56.1. Although Defendant's memorandum in support of his motion for summary judgment does contains a statement of fact (titled "Statement of the Case"), Defendant has not submitted a separate statement specifically identifying the disputed and undisputed material facts as required by Rule 56.1. A moving party's failure to comply with Rule 56.1 is itself sufficient to deny its motion. See Bowers v. NCAA, 9 F. Supp.2d 460, 476 (D.N.J. 1998). However, because the Court finds no evidence of bad faith, and finds Defendant's factual representations to be well-organized, the Court will not deny Defendant's motion on these procedural grounds and will now address the merits of Defendant's motion.

either the FTCA or Bivens, Defendant's motion for summary judgment will be granted.

### 1. Claim under the Federal Tort Claims Act

The FTCA permits an action against the United States for alleged wrongful acts or omission of "any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1) (2006). The remedy against the United States as provided by Section 1346(b) is exclusive. See 28 U.S.C. § 2679(a) (2006). Thus, suit against a Federal agency or employee whose act or omission gave rise to the claim is not allowed. Id. at §§ 2679(a) and (b)(1).

Here, Plaintiff brought this action solely against Defendant Miner in his official capacity, and not against the United States. The Complaint was addressed to Miner as the "Warden" of FCI Fairton. (Compl. at 1). Plaintiff never claimed or otherwise indicated in the Complaint that his suit against Miner was brought other than in Miner's official capacity. In fact, Plaintiff's requested remedy for "immediate medical treatment and a transfer to a medical facility in the Bureau of Prison" (Compl. at 10a), would not have been possible unless Plaintiff sued Miner in his official capacity. Defendant Miner is therefore an improper Defendant in the instant case and Plaintiff's claim is thereby precluded by Section 2679, which only allows claims to be brought against the United States.

Normally, when a pro se complaint under the FTCA is filed against a federal employee or officer, the named defendant, being improper under Section 2679(a), is dismissed and the United States is substituted as the proper party defendant.  To do so in this case, however, would be futile because Plaintiff did not timely file this FTCA case.  The government has established that Plaintiff filed an administrative tort claim with the Bureau of Prisons, complaining of injuries received in the motor vehicle accident, on February 2, 2005, (Def.'s Br. at Ex. D), and that the Bureau of Prisons denied the tort claim on July 7, 2005, which denial was received by Plaintiff on July 14, 2005.  (Id.) That denial started the six-month limitation period of 28 U.S.C. § 2401(b) within which Plaintiff must commence suit in federal court.  That period expired on January 14, 2006, at the latest. The present Complaint was not received by the Clerk of Court until February 3, 2006, and it was not filed until March 3, 2006 in the U.S. District Court for the District of Columbia. Plaintiff had not signed the Complaint until January 30, 2006, so even with benefit of the mailbox rule for timeliness, his mailing occurred, at the earliest, on January 30, 2006, which was at least 16 days out of time.  Therefore, this Complaint was untimely under the FTCA even if it had originally named the United States as the proper defendant.

    **2. Claims under Bivens**

9

In Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001). In doing so, the Supreme Court created a new tort as it applied to federal officers, and a federal counterpart to the remedy created by 42 U.S.C. § 1983.[6]

To state a claim under Bivens, a plaintiff must "establish (1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." Ting v. U.S., 927 F.2d 1504, 1512 (9th Cir. 1991). "Complaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed." Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir. 1977). Indeed, "[d]iffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." Id.

---

[6] Bivens actions are the federal counterpart to § 1983 actions brought against state officials who violate federal constitutional or statutory rights. See Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004), cert. denied, 543 U.S. 1049 (2005). Both are designed to provide redress for constitutional violations. Thus, while the two bodies of law are not "precisely parallel", there is a "general trend" to incorporate § 1983 law into Bivens suits. Chin v. Bowen, 833 F.2d 21, 24 (2d Cir. 1987).

Although the Third Circuit has declined to address the issue of the availability of vicarious liability in <u>Bivens</u> action, <u>see</u> <u>Young v. Quinlan</u>, 960 F.2d 351, 358 n. 14 (3d Cir. 1992), it has indicated in non-precedential opinions that "liability under <u>Bivens</u> . . . may not [be] based on the doctrine of respondeat superior."  <u>Parker v. United States</u>, 197 Fed. Appx. 171, 172 n. 1 (3d Cir. 2006); <u>see also</u> <u>Richards v. Penn.</u>, 196 Fed. Appx. 82, 85 (3d Cir. 2006)(holding that "vicarious liability is not available in a <u>Bivens</u> action"); <u>Balter v. United States</u> 172 Fed. Appx. 401, 403 (3d Cir. 2006) (same).

Furthermore, at least six other Courts of Appeals have held that "respondeat superior is not a viable theory of <u>Bivens</u> liability."  <u>Rivera v. Riley</u>, 209 F.3d 24, 28 (1st Cir. 2000); <u>see also</u> <u>Cronn v. Buffington</u>, 150 F.3d 538, 544 (5th Cir. 1998); <u>Buford v. Runyon</u>, 160 F.3d 1199, 1203 n. 7 (8th Cir. 1998); <u>Bibeau v. Pac. Nw. Research Found.</u>, 188 F.3d 1105, 1114 (9th Cir. 1999); <u>Abella v. Rubino</u>, 63 F.3d 1063, 1065 (11th Cir. 1995); <u>Simpkins v. Dist. of Columbia Gov't</u>, 108 F.3d 366, 369 (D.C. Cir. 1997).  A plaintiff in a <u>Bivens</u> action must state a claim for "direct rather than vicarious liability."  <u>Rivera</u>, 209 F.3d at 28.

Here, reading the Complaint with liberality, the Court construes it to be alleging a <u>Bivens</u> claim under the Eighth Amendment for deliberate indifference to serious medical needs by

Warden Miner. For the reasons that follow, the Court assumes that the Complaint states an Eighth Amendment claim, but that the Defendant's summary judgment affidavit establishes that Plaintiff will be unable to prove that his medical care was violative of the Eighth Amendment upon the undisputed facts.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Id. at 106; Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would

12

recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss."  Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003); see also Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.  Andrews v. Camden County, 95 F. Supp. 2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ...

13

[which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. See Rouse, 182 F.3d at 197. The court has also held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment. Atkinson, 316 F.3d at 266. See also Monmouth County Corr. Inst. Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

14

In this case, Plaintiff alleges that Defendant Miner and the health service administrator at FCI Fairton have deliberately refused treatment and medical care for Plaintiff's acknowledged condition after he sustained injuries in the motor vehicle accident. Due to Defendants' deliberate inaction, Plaintiff alleges that his condition has worsened and that he continues to suffer extreme pain and disability.

Here, it is undisputed that the Defendant provided Plaintiff with access to medical treatment. In fact Plaintiff visited FCI Fairton medical services at least four times subsequent to his motor vehicle accident and he received medical treatment for his pain. (Def.'s Br. at Ex. F.) Additionally, Plaintiff had x-rays and MRI performed on his spine in response to his complaint of back pain. (Morales Aff. at Ex. C.) Dr. Morales, upon assessing Plaintiff's x-rays and MRI results, determined that Plaintiff's symptoms did not warrant surgery and continued to treat his back following an established treatment plan, subject to adjustments as need arises. (Dr. Morales Aff. ¶ 7.) These facts show that Plaintiff received consistent treatment and attention, and that his complaint is with the speed of his recovery rather than the denial of necessary care and pain relief. Accordingly, even if the Complaint were amended to state a new defendant, the director of medical services, the Defendant would still be entitled to summary judgment.

In addition to being unable to prove that his medical care was violative of the Eighth Amendment, the Complaint failed to allege specific constitutional encroachment by Defendant. Plaintiff merely states that "the health service administrator as well as warden Miner has acknowledged the existence of a serious medical condition, but they have refused provide [sic] the appropriate treatment." (Compl. at 10.) This statement falls short of the allegation of "specific instance of misconduct" required to state a Bivens claim; it contains no allegation whatsoever as to what Defendant Miner did to violate his constitutional rights or otherwise details the necessary factual basis to enable Defendant to intelligently prepare for his defense. See Ostrer, 567 F.2d at 553. In short, upon the evidence presented, no reasonable factfinder could find that the health services administrator was deliberately indifferent to Plaintiff's medical needs; at most Plaintiff asserts that the treatment was not intensive, or that it did not succeed in curing his condition, but such proof does not rise to the level of an Eighth Amendment claim for punishment that is cruel and unusual through deliberate indifference to serious medical needs.

Furthermore, because the evidence received in this summary judgment motion failed to show any nexus between Plaintiff's injury and Defendant Miner's action, his claim against Defendant appears to be based solely by virtue of Defendant's position as

16

the Warden of FCI Fairton.  This Court will follow the great weight of authority supporting the proposition that <u>Bivens</u> liability will not lie on the basis of respondeat superior.  In any event, the existence of respondeat superior liability of the warden for the actions of medical services personnel is a moot point where, as in this case, there is no liability lying in the actions or inactions of the medical personnel themselves, as discussed above.  Consequently, the Court will grant Defendant's motion for summary judgment.

### III. <u>CONCLUSION</u>

Because Defendant Miner is not a proper defendant under FTCA and Plaintiff failed to allege the specific constitutional encroachment necessary to state a <u>Bivens</u> claim, Defendant's motion for summary judgment will be granted.  The accompanying Order will be entered.

**July 27, 2007**             **s/ Jerome B. Simandle**  
Date            JEROME B. SIMANDLE  
           U.S. District Judge